COOK v. MORAN TOWING & TRANSPORTATION CO.

(Circuit Court of Appeals, Second Circuit. December 11, 1911.)

No. 85.

1. COLLISION (§ 77*)—MOVING AND DRIFTING VESSELS—LOOKOUT.
Besides watching for lights ahead and on crossing courses, a lookout should also be watchful for things adrift so near as to be likely to drift against his vessel, and, where she has a long tow, his watch for such unlighted drifting objects should be correspondingly extended.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 140–149; Dec. Dig. § 77.*]

2. COLLISION (§ 61*)—TOW AND DRIFTING LAUNCH—FAULT OF TUG.
The finding of a District Court that a tug with two dumping scows in tow on a hawser 2,000 feet long returning to New York Harbor in the early morning was solely in fault for a collision between the near scow and a motor launch containing several persons, which was disabled and

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

drifting without lights, on the ground that she did not keep an efficient lookout, affirmed.

[Ed. Note.—For other cases, see Collision, Cent. Dig. § 78; Dec. Dig. § 61.*

Collision with or between towing vessels and vessels in tow, see note to The John Englis, 100 C. C. A. 581.]

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty by Mabelle B. Cook against the Moran Towing & Transportation Company. Decree for libelant (188 Fed. 846), and respondent appeals. Affirmed.

This cause comes here upon appeal from a decree of the District Court, Southern District of New York, in favor of libelant for loss of earnings, personal effects, medical expenses, and pain and suffering as a result of being thrown into the water of the Lower Bay, New York, and almost drowned, in consequence of a collision between a dumping scow in tow of respondent's tug and a motor launch which had broken down, and in which were libelant and seven other persons. The district judge held the tug solely in fault for the collision. His opinion will be found in 188 Fed. 846.

W. L. O'Brion, for appellant.

Hunt, Hill & Betts (Geo. Whitefield Betts and Robert McLeod Jackson, of counsel), for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

PER CURIAM. The facts of the case are so fully set forth in the opinion of the district judge (188 Fed. 846) that we shall not undertake to rehearse them here. The tug was found in fault for not keeping a proper lookout.

This case is a very close one and might have been decided either way. Under these circumstances, we ought not to disturb the conclusion of the court which has the primary duty of finding the facts and which had the advantage of seeing and hearing the witnesses, unless we are very clearly of the opinion that there was error in some material finding. If the facts are as the district judge found them, the conclusion that a proper lookout was not maintained legitimately follows.

Referring briefly to the matters in dispute:

(1) We do not believe that between the time the vessels came in sight of each other and the time of the collision the tug changed her course to starboard. There seems to be no reason why she should. Even if she did make a slight change, that would not operate to haul the tows over as described. The witnesses from the launch have evidently confused the movements of the launch on which they were with the movements of the tug and tows—a not infrequent occurrence.

(2) We agree with Judge Holt that all libelant's witnesses have greatly exaggerated the time they were in the water, as they naturally would.

(3) We also agree with him as to the time of the catastrophe, and that it was light enough then to have seen the launch if it were near enough to the course of the tug to drift in front of the last scow of the two, during the time the tow was being hauled forward about one-third of a mile (the length of the flotilla with hawsers was over 2,000 feet), which at 4 miles an hour would be between 5 and 6 minutes.

(4) Libelant's witnesses' estimates of distances are of little value. Quite naturally they put the tug's distance from them at 200 feet. Hope and expectancy were picturing her as coming near enough to them to render aid. They also testified that the tug passed them about as far off as the distance between the tug and the first scow. That is manifestly wrong. The launch under existing conditions could not drift 1,200 feet in five minutes.

(5) We concur also as to the time. Not much reliance can be placed on the stoppage of the watches after immersion. There are too many elements of uncertainty; but there is positive evidence by two of libelant's witnesses as to looking at their watches before sighting the tug. It had then grown light enough to make out the numbers on the watch faces, and the witnesses noted the time and testified to it. Since the district judge credited their testimony as to that circumstance which has nothing improbable about it, we also accept it.

(6) We think the lookout, except for approaching lights, was mainly to port, through the open window on the side of the pilot house where the lookout stood. The tug's own evidence shows this.

[1] (7) Besides watching for lights ahead and on crossing courses, a lookout should also be watchful for things adrift—wreckage, derelicts or what not—so near as to be likely to drift against his vessel. If she be navigating alone, a limited area is all he need peer into for such things since progress by drifting is usually slow. But the longer his navigating unit (by tows, etc.) the farther must he look to detect the presence of such unlighted moving objects. In this case, with a navigating unit over 2,000 feet long, extreme caution was required as has been held repeatedly in this and in the first circuit.

[2] Considering the rate of drift, the hour, and conditions as to amount of light, we think the tug passed so near the drifting launch that a careful lookout properly placed would have discovered it; and agree with Judge Holt in the conclusion that it was not discovered because the lookout was in the pilot house, giving his attention more particularly to what lay to port, to leeward. We attach little weight to the circumstance that the officers of the rescuing steamer El Paso found it difficult a little later, when it was lighter, to discover the survivors. The man on the tool box and the upturned launch with those clinging to it, obscured by the waves, were quite different objects from the launch with three feet free board riding the waves and with persons standing up in her waving handkerchiefs and shouting.

The decree is affirmed, with interest and costs.